**RAMADA INNS, INC., Hotel Ramada of Nevada, Admar of New Jersey, Inc. and Ramada Hotel Operation Company, Plaintiffs,**

v.

**DOW JONES & COMPANY, INC. Defendant.**

Superior Court of Delaware, New Castle County.

Submitted: Oct. 15, 1986.
Decided: Dec. 15, 1986.

F. Alton Tybout, of Tybout, Redfearn, Casarino & Pell, and Thomas C. Green, of Sharp, Green & Lankford, Washington, D.C., for plaintiffs.

Edmund N. Carpenter, II, of Richards, Layton & Finger, and Gregory L. Diskant, of Patterson, Belknap, Webb & Tyler, New York City, for defendant.

TAYLOR, Judge.

Plaintiffs seek to take the deposition of two attorneys, Gregory L. Diskant, Esq., who is head counsel for Dow Jones & Company, Inc. [defendant] in this suit, and Robert S. Sack, Esq., who is general counsel of defendant.

This is a libel suit growing out of articles written by James A. Drinkhall and John Andrews and published by defendant in the Wall Street Journal [Journal]. Plaintiffs seek, by these depositions, to establish what facts were communicated to the management and/or editors of the Journal regarding Mr. Drinkhall's reporting policies and manner of performance as a writer for the Journal.[1] Plaintiffs support their need for taking these depositions on the ground that the managing editor of the Journal was "less than precise in his knowledge of the emerging evidence accumulated by plaintiffs during previous litigation."

The discovery sought by plaintiffs deals with facts communicated by the attorneys to the management and/or editors of the Journal. Plaintiffs seek to use this information to aid in establishing reckless indifference to the truth or actual malice on the part of the Journal, by showing that the editors of the Journal were on notice of Jim Drinkhall's reporting practices when they published his articles which are the subject of this suit.

The fact that the management and/or editors of the Journal had certain information at a critical time is relevant to an issue in this case, Rule 401 *Delaware Uniform Rules of Evidence*, in that it may have a tendency to establish plaintiffs' contention that defendant was aware of Mr. Drinkhall's reporting practices which resulted in these allegedly libelous articles.

Defendant opposes these depositions on the grounds that the subject of the depositions is protected (1) by lawyer-client privilege and (2) by the work product rule.

I.

■ The current scope of the lawyer-client privilege in this State is defined in Rule 502 of the *Delaware Uniform Rules of Evidence*. Rule 502(b) declares:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.[2]

1. The primary focus of this inquiry is information developed in pre-trial preparation in *Kramer v. Drinkhall, et al.,* No. 80–3324 (1980) in the United States District Court for the District of Columbia [Kramer litigation] in which Dow Jones was a party.

2. It is noted that lawyer-client privilege is subject to certain exceptions, none of which are

Paraphrasing the language of Rule 502(b) as it applies to alternative number (1), the privilege extends to a (1) communication, (2) which is confidential, (3) which was made for the purpose of facilitating the rendition of professional legal services to the client, (4) between the client and it's attorney.

The significance of Rule 502 becomes clear from a review of the events which led up to the adoption of the *Delaware Uniform Rules of Evidence.* Before adoption of the *Federal Rules of Evidence,* a body of case law developed in the Federal Courts which excluded from the protection of the lawyer-client privilege, information obtained by an attorney from non-privileged sources. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); 8 *Wright & Miller, Federal Practice and Procedure:* Civil § 2017, p. 137. This limited exclusion has been applied even where the attorney communicated that information to the client. *In re Sealed Case,* D.C.Cir., 737 F.2d 94 (1984); *United States v. International Business Machines Corp.,* S.D.N.Y., 66 F.R.D. 206, 211–2 (1974); *J.P. Foley & Co., Inc. v. Vanderbilt,* S.D.N.Y., 65 F.R.D. 523 (1974). Not all decisions of the Federal Courts have followed this view. *Valente v. Pepsico, Inc.,* D.Del., 68 F.R.D. 361, 367 (1975); *In re Grand Jury Proceedings,* 3d Cir., 604 F.2d 798 (1979); *United States v. Amerada Hess Corp.,* 3d Cir., 619 F.2d 980 (1980). The Court of Appeals for the Third Circuit in *United States v. Amerada Hess Corp.,* supra, at 986, disapproved the exclusion of such communications from a lawyer to his client from protection as a privileged communication.

Conceptually, the two lines of federal decisions differ over whether all communications from an attorney to his client (which otherwise come under the traditional concept of privilege) should be protected

by the privilege or whether only attorney's communications which reflect prior communications from the client should be protected. The latter alternative rests on the premise that the sole objective of the privilege is to permit a client to divulge matters to an attorney without fear that these will be revealed to anyone else. *J.P. Foley & Co., Inc. v. Vanderbilt,* 65 F.R.D. at 526; *United States v. International Business Machine Corp.,* 66 F.R.D. at 211; *United States v. Silverman,* 2d Cir., 430 F.2d 106 (1970); 8 *Wigmore on Evidence* (McNaughton Ed.) § 2290–2292, p. 542–554; *McCormick on Evidence* (3d Ed.) § 87, p. 205.

The decisions by the Federal Courts cited by plaintiffs have followed the rationale espoused by Wigmore and McCormick that the legitimate purpose of lawyer-client privilege is only to assure that the client can disclose all pertinent information to the attorney without fear that it will be divulged. This concept was embodied in the following oft-quoted formulation by Judge Wyzanski in *United States v. United Shoe Machinery Corporation,* D.Mass., 89 F.Supp. 357 (1950):

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." [3]

applicable here. Cf. Rule 502(d); *In re Kennedy,* Del.Supr., 442 A.2d 79 (1982).

3. 8 *Wigmore on Evidence* (McNaughton Ed.) § 2292, p. 554, set forth the standard as follows:
(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

The Committee which formulated the draft of the *Federal Rules of Evidence* which was approved by the United States Supreme Court inserted a series of Rules dealing with privilege. The Rule dealing with lawyer-client privilege, Rule 503, was substantially the same as Rule 502 of the *Uniform Rules of Evidence.* It will be noted that draft Federal Rule 503 differs substantially from the Judge Wyzanski and Wigmore formulations which limit lawyer-client privilege to communications made by a client. The *Uniform Rules of Evidence* formulation contains no such limitation but instead extends to communications *between* the lawyer and the client.

When the Rules of Evidence as conditionally adopted by the United States Supreme Court came before Congress, the rules dealing with privilege came under criticism. 2 *Weinstein's Evidence* § 502–1 to 501–19. Ultimately, it was concluded that a formulation satisfactory to Congress could not be made and Congress struck the rules defining privilege and substituted a rule which would "leave the Federal law of privilege where we found it." *Ibid.,* p. 501–19. Thus, the division within the Federal Courts remains.

Prior to adoption of the *Federal Rules of Evidence,* the Chief Justice of this State appointed a committee of lawyers and judges to consider the adoption of rules of evidence for this State. With the staff assistance of Prof. Louis E. Schwartz of Delaware Law School, the committee made a thorough study of the Federal Rules as conditionally adopted by the United States Supreme Court and as modified by Congress, and the *Uniform Rules of Evidence* and prior Delaware decisions. On the subject of lawyer-client privilege, the Committee adopted (with only minor modification not significant here) the wording of Rule 502 of the *Uniform Rules of Evidence,* as Rule 502 of the Delaware Rules.

The comment at the end of Rule 501 of the *Delaware Uniform Rules of Evidence* (which is adopted with respect to Rule 502) notes that the Delaware draftsmen rejected the view of the United States Congress that the definition of privilege should be left to the common law. However, that comment notes that "except for minor refinements," the Delaware Rules defining privilege are consistent with existing Delaware law.

The comment following Rule 502 refers to only one prior decision which that Rule is intended not to be in conflict with, namely, *Riggs Nat. Bank of Washington, D.C. v. Zimmer,* Del.Ch., 355 A.2d 709 (1976). That case held that the lawyer-client privilege does not prevent a trust beneficiary from obtaining a legal memorandum submitted to the trustee by its attorney and requested by the trustee for the benefit of the trust beneficiaries. The reasoning of the Chancellor was that in such case, the beneficiaries were the real client for whom the legal memorandum was prepared. This holding does not conflict with the meaning which the instant case attaches to Rule 502.

The foregoing background demonstrates that Delaware Rule 502 is a departure from the federal cases. Further, to the extent that Rule 502 requires a different result, it is a departure from the efforts to narrow the lawyer-client privilege under the philosophies discussed above.

## II.

I turn to the elements which Rule 502 specifies for qualification as lawyer-client privilege.

### A.

The first consideration is whether the information which plaintiffs seek is a communication. The Rule does not define "communication." Clearly, words spoken or written by Mr. Diskant or Mr. Sack to their client are communications. Since plaintiff seeks to learn whether the attorney delivered Kramer litigation depositions to the Journal's management and/or editors, there is the additional question of whether an attorney's act of sending or handing over written factual material to his client is a communication. The word "communication" has been defined to include any means by which information or thought is conveyed from one person to

another. *State v. Smith*, Me.Supr., 384 A.2d 687 (1978); *In re Navarro*, Cal.App., 93 Cal.App.3d 325, 155 Cal.Rptr. 522, 523 (1979); *Cooper v. Mann*, Ala.Supr., 273 Ala. 620, 143 So.2d 637, 639 (1962); *U.S. v. Ross*, 2d Cir., 321 F.2d 61, 69 (1963). Communication is: information given; the sharing of knowledge by one with another; act of or system of transmitting information. *Black's Law Dictionary* (5th Ed.) 253. A communication is: a statement made in writing or by word of mouth from one person to another; transfer of information by speech or acts, signs or appearances. *Ballentine's Law Dictionary* 230. Somewhat analogous to communication is the word "statement." The term "statement" is defined in Rule 801(a) of the *Delaware Uniform Rules of Evidence* to mean "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." It follows that the act of sending or handing written material to another person constitutes a statement or communication. I conclude that if Mr. Diskant or Mr. Sack sent or handed a deposition to an editor of the Journal or a member of the management of defendant, that act was a communication under Rule 502(b).

### B.

The second consideration is whether the communication was confidential. Under Rule 502(a)(5):

> A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

A communication made in furtherance of the rendition of professional legal services to the client is a confidential communication unless the client intends the information to be disclosed to persons outside the circle of confidentiality. 2 *Weinstein's Evidence* § 503(a)(4)[01], p. 503–30. The affi-

davits of Mr. Diskant and Mr. Sack, which were filed in connection with the present motion, lead to the conclusion that if a deposition from the Kramer litigation was delivered to any editor or member of management involved with defendants, such delivery was made in a setting of confidentiality; namely, that it would not be divulged outside the management-editorial circle. I find that the second element of Rule 502(b) has been satisfied.

### C.

The third consideration is whether the communication "was made for the purpose of facilitating the rendition of professional legal services to the client." According to the affidavits discussed above, if any deposition was communicated to the management or editorial circle, it was done to facilitate the defense of Dow Jones in the Kramer litigation, and additionally, in the case of Mr. Sack, to facilitate his rendition of legal services as general counsel of Dow Jones. I find that this element has been satisfied.

### D.

The final consideration is whether the communications were between the client and its attorney. It has been noted above that Rule 502(b)(1) uses the bi-directional word "between." This is in contrast to Rule 502(b)(3) which refers to communications "by" the client "to" a lawyer representing another in a matter of common interest. The use of single-directional language in one category and bi-directional language in another, strengthens the interpretation that Rule 502(b)(1) was intended to apply equally to a communication made by the client to the attorney and to a communication made by the attorney to the client.[4] In addition, Rule 502(b)(1) does not condition the scope of the lawyer-client privilege on the source of the material communicated. I find that this element has been satisfied.

---

4. 2 *Weinstein's Evidence* § 503(b)[03], p. 503–39, in discussing § 503 of the Supreme Court Draft Federal Rules of Evidence recognized that the language of that Draft Rule (which is the same as Rule 502 of the Delaware Uniform Rules of Evidence) applies to communications by the lawyer as well as those by the client. Supreme Court Draft Rule 503 was struck by Congress.

 Based on the foregoing considerations, I conclude that plaintiffs are barred, by Rule 502(b) of the *Delaware Uniform Rules of Evidence,* from learning what facts were communicated, whether by word or act, by the attorneys to the management and/or editors of the Journal, or from learning from the attorneys what facts were known by the management and/or editors of the Journal.

## III.

Defendant also resists the proposed deposition of its attorneys on the ground that the subject which the deposition of the attorneys would cover represents work product which is privileged. In view of the conclusion reached above, it is unnecessary to discuss the work product contention.

## IV.

 In reaching this decision, the Court notes that it is the fact that a communication between the attorney and the client, having a particular subject or content, was made, which is protected. However, a party can be required to divulge facts which have come to the party's knowledge or attention regardless of the source even though the source may have been a communication from the attorney. *Upjohn Co. v. United States,* 449 U.S. 383, 395–396, 101 S.Ct. 677, 685–686, 66 L.Ed.2d 584, 595 (1981). This decision does not preclude possible discovery by way of interrogatories directed to the defendant whereby a greater source of facts may be drawn upon than the defendant's memory. Cf. 8 *Wright & Miller, Federal Practice & Procedure:* Civil § 2174, p. 550, § 2177, p. 561–3; *Lunn v. United Aircraft Corporation,* D.Del., 25 F.R.D. 186, 188–9 (1960); *Cleminshaw v. Beech Aircraft Corporation,* D.Del., 21 F.R.D. 300, 301 (1957); *Cinema Amusements, Inc. v. Loew's Inc.,* D.Del., 7 F.R.D. 318, 321 (1947).

Based on the foregoing considerations, plaintiffs' motion to compel the depositions of defendant's attorneys, Gregory L. Diskant, Esq., and Robert D. Sack, Esq., to develop the information set forth in this motion is denied.

IT IS SO ORDERED.