**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

RICHARD F. BURKHART, WILLIAM )
E. KELLY, RICHARD S. LAVERY, )
THOMAS R. PRATT and GERALD )
GREEN, individually and on behalf of )
all others similarly situated, )
　 )
　　　　Plaintiffs, )
　 )
　　　v. ) C.A. No. 2018-0691-NAC
　 )
GENWORTH FINANCIAL, INC., )
GENWORTH HOLDINGS, INC., )
GENWORTH NORTH AMERICA )
CORPORATION, GENWORTH )
FINANCIAL INTERNATIONAL )
HOLDINGS, LLC and GENWORTH )
LIFE INSURANCE COMPANY, )
　 )
　　　　Defendants. )

### ORDER RESOLVING THE REMAINING ASPECTS OF DEFENDANTS' MOTION TO COMPEL

WHEREAS:

1. In March 2023, defendants Genworth Financial, Inc., Genworth Holdings, Inc., Genworth North America Corp., Genworth Financial International Holdings, LLC, and Genworth Life Insurance Co. (together, "Defendants") served requests for production on the named plaintiffs, Richard F. Burkhart, William E. Kelly, Richard S. Lavery, Thomas R. Pratt, and Gerald Green (together, "Plaintiffs").

2. Defendants deposed Plaintiffs in September and October of 2023. During their depositions, Mr. Kelly, Mr. Green, and Mr. Lavery discussed non-party Harold Horwich—a transactional attorney and Mr. Kelly's former law partner. Questioning as to their relationships to Mr. Horwich was repeatedly cut short,

however, with Plaintiffs' counsel (from the law firm of Shapiro Haber & Urmy LLP or "SHU") objecting on privilege grounds. Mr. Kelly, Mr. Green, and Mr. Lavery testified in a manner suggesting they had varying views on the nature and extent of their relationships with Mr. Horwich.

3. In a January 2024 and an updated February 2024 privilege log, Plaintiffs revealed they were withholding numerous communications between Plaintiffs and Mr. Horwich.

4. On April 19, 2024, Defendants filed a motion to compel documents and testimony that Defendants asserted Plaintiffs had improperly withheld based on assertions of attorney-client privilege.[1] Defendants moved to compel production of documents and testimony regarding (1) the engagement letters between Plaintiffs and SHU; (2) the litigation funding and/or engagement agreement entered into with the entities providing litigation funding to SHU; (3) communications between Plaintiffs or their counsel and Mr. Horwich; and (4) communications between Plaintiffs and other putative class members.

5. I heard argument on the Motion on June 13, 2024. Toward the conclusion of argument, I asked Plaintiffs to submit for *in camera* review all of the documents from the privilege log that were in dispute.[2]

---

[1] *Burkhart v. Genworth Fin. Inc.*, C.A. No. 2018-0691-NAC ("Dkt.") 309, Defs.' Mot. to Compel Discovery on Fee Arrangements, Lit. Funding and Pls.' Non-Privileged Communications (the "Motion").

[2] References to entries on Plaintiffs' privilege log refer to those entries included in the log dated January 23, 2024, which was submitted to the Court with Plaintiffs' documents for *in camera* review. The documents on the privilege log are identified by number. In this order I refer to the documents with the form "Entry [Document Number]."

2

6. On August 21, 2024, I granted Defendants' Motion as to the first two categories of documents sought in the Motion, ordering production of the unredacted Funding Agreement and Contingent Fee Agreements.[3] I deferred decision on the remaining two categories of documents and testimony sought in the Motion.[4]

7. I have completed my *in camera* review and am prepared to rule on the remainder of Defendants' Motion.

NOW, THEREFORE, the Court having carefully considered the Motion papers and oral argument on the Motion, and having conducted an *in camera* review of the disputed documents following argument, IT IS HEREBY ORDERED, this 18th day of December 2024, as follows:

1. In withholding otherwise responsive documents on the basis of privilege, the parties claiming privilege—Plaintiffs in this instance—bear the burden "to show why and in what way the information requested is privileged[.]"[5] Plaintiffs must "provide 'precise and certain reasons'" why privilege applies for each document over which privilege is claimed.[6] The requirements for preparing a satisfactory log under Delaware law are "readily established and easily available."[7]

---

[3] Dkt. 333, the "Memorandum Opinion."

[4] In my August 21, 2024 Memorandum Opinion I indicated that I would defer ruling on the remainder of the Motion, pending supplemental briefing. *Id*. at 4 n.7. After further review of the *in camera* documents I determined that additional briefing was unnecessary.

[5] *In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 959396, at *1 (Del. Ch. Mar. 13, 2017).

[6] *Mechel Bluestone, Inc. v. James C. Justice Cos., Inc.*, 2014 WL 7011195, at *4, 9 (Del. Ch. Dec. 12, 2014) (quoting *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93 (D. Del. 1974)).

[7] *Klig v. Deloitte LLP*, 2010 WL 3489735, at *5 (Del. Ch. Sept. 7, 2010).

2.      Attorney-client privilege "extends to a (1) communication, (2) which is confidential, (3) which was for the purpose of facilitating the rendition of professional legal services to the client, (4) between the client and his attorney."[8]

3.      I have already ruled on half of the Motion. The remainder of Defendants' Motion argues that Plaintiffs have improperly withheld two categories of documents as privileged, and improperly prevented deposition testimony on the same categories. First, Defendants argue that communications with Mr. Horwich are not privileged, because Mr. Horwich was never counsel of record in this case, certain of the Plaintiffs did not believe he was their attorney, and some of Plaintiffs' privilege log entries are deficient. Second, Defendants argue that a small number of documents between the Plaintiffs and other class members are not privileged because they did not include an attorney and because the privilege log descriptions are insufficient to support a claim of attorney-client, joint client, or common interest privilege. Finally, Defendants argue that they should be permitted to take further deposition testimony as to the documents and topics that are the subject of the Motion.

4.      All of the documents remaining at issue for this Motion involve some communication from Mr. Horwich. Defendants first argue that Mr. Horwich did not have an attorney-client relationship with Plaintiffs because he is not identified as "counsel of record" in this class action, but they do not provide a basis to believe one

[8] *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992) (internal quotation marks omitted); *see also Hyde Park Venture P'rs Fund III, L.P. v. FairXchange, LLC*, 292 A.3d 178, 188 (Del. Ch. 2023) (quoting *Deutsch v. Cogan*, 580 A.2d 100, 104 (Del. Ch. 1990)).

must be "counsel of record" in order for attorney-client privilege to attach. It is true that Mr. Horwich never had a formal attorney-client relationship with Plaintiffs in this action. There is no engagement letter, nor was he paid for any representation of Plaintiffs. Mr. Horwich also "is not entitled to be paid any fees out of any recovery in this case."[9] But Rule 502(a)(1) of the Delaware Uniform Rules of Evidence defines "client" to include "a person, public officer or corporation, association or other organization or entity . . . who consults a lawyer with a view to obtaining professional legal services from the lawyer." "Implicit in this language is that a person who has consulted a lawyer may still invoke the protection of the [privilege], even if that person did not ultimately retain the lawyer."[10]

5. It seems that, over a year before Plaintiffs commenced this action, Mr. Kelly began communicating with Mr. Horwich, his former law partner,[11] about Defendants.[12] Mr. Kelly had intermittent communications with Mr. Horwich about Defendants over a period of many months. Then, in the half a year or so leading up to commencement of this action, the nature of the interactions seems perhaps to have evolved. Mr. Horwich sent Mr. Kelly a draft complaint to review, participated in

---

[9] Dkt. 318, Pls.' Opp'n to Defs.' Mot. to Compel at 11 n. 29.

[10] *Benchmark Capital P'rs IV, L.P. v. Vague*, 2002 WL 31057462, at *3 (Del. Ch. Sept. 3, 2002) (internal quotation marks omitted).

[11] Mr. Horwich and Mr. Kelly were law partners at Mr. Horwich's former firm Hebb & Gitlin, later Bingham McCutchen LLP. After leaving Bingham McCutchen, Mr. Kelly worked as in-house counsel for nine years before retiring from the practice of law in 2017. Dkt. 310, Aff. of T. Carter White in Supp. of Defs.' Mot. to Compel ("White Aff.") Ex. 14 at 8-10. Mr. Horwich and Mr. Kelly were not working together in 2017 when Mr. Kelly began communicating with Mr. Horwich about Defendants. *Id.* at 143-144.

[12] *Id.* at 39-42.

5

front-end case development for this litigation, and referred the Plaintiffs to their counsel at SHU.[13]

6.     In his deposition, Mr. Kelly testified that he "believe[d] [Mr. Horwich] would have considered me his client and I considered him my attorney."[14]   Per Defendants, however, Mr. Green and Mr. Lavery testified at their depositions that Mr. Horwich is not their lawyer.  But Defendants omit important context from that questioning.  Notwithstanding Defendants' blanket assertions that Mr. Green and Mr. Lavery "testified unequivocally that Mr. Horwich is not their lawyer[,]"[15] their testimony actually seemed to relate to whether they knew (and the extent to which they knew) Mr. Horwich.  It appears that Mr. Horwich primarily communicated with Mr. Kelly and had limited interactions, if any at all, with the other named Plaintiffs.  Under these circumstances, it is reasonable that the other Plaintiffs might not have known Mr. Horwich or fully understood his relationship to the case.  And Mr. Green did testify that he believed "Mr. Horwich was working with [SHU]" and that he later "thought Hal Horwich and his firm were an integral part of this action."[16]   Having reviewed the *in camera* documents, I conclude that the circumstances of Mr. Horwich's interactions with Mr. Kelly were, at least initially, sufficiently muddy that Plaintiffs' invocation of privilege was generally not improper for documents created through May 21, 2018.

---

[13] *Id.* at 61-62.

[14] *Id.* at 40.

[15] Dkt. 309, Motion at 5.

[16] White Aff. Ex. 17 at 74, 79.

6

7. To the extent I am giving Plaintiffs the benefit of the doubt here, however, that ends with Entry 26 on Plaintiffs' log. In that email, sent shortly after the draft complaint, Mr. Horwich makes sufficiently clear that his clients are entities other than Mr. Kelly and that Mr. Kelly and the Plaintiffs are differently situated from Mr. Horwich's clients.[17] It seems that a reasonable lay person—or former attorney such as Mr. Kelly—should have been on notice after receiving that email that Mr. Horwich and his firm did not, and would not, represent Plaintiffs or Mr. Kelly. But there also could be arguments that Mr. Kelly retained a good faith, reasonable belief that Mr. Horwich was nonetheless his lawyer or prospective lawyer. Neither party had a chance to make any of those arguments, however, because Plaintiffs obscured the nature of Mr. Horwich's role from Defendants.

8. Plaintiffs did not identify Mr. Horwich's clients, despite this information being both nonprivileged and highly relevant. During oral argument, Defendants specifically explained that they did not know what relationship Mr. Horwich had to this case:

> And so there is some relationship with Mr. Horwich in this case. We candidly don't know exactly what it is. It's a little bit opaque. But

---

[17] Although Plaintiffs have not identified Mr. Horwich's clients, it appears that some or all of the clients referenced in Entry 26 eventually became the "Funders" backing the current action. I draw this inference from certain of the *in camera* documents, including wherein Mr. Horwich states that he represents major medical insurance companies willing to pay the cost of a suit brought by policyholders against Genworth. Although I include this information for context, the specific identities of Mr. Horwich's clients do not impact my privilege analysis.

7

whatever it is, he's not Mr. Green's lawyer; he's not Mr. Lavery's lawyer.[18]

Plaintiffs should have been upfront and transparent about the identity of Mr. Horwich's clients. This would have enabled the parties to engage in meaningful meet and confer discussions over the privilege dispute and then to present any unresolved arguments to the Court in a coherent fashion.[19]

9.      The identity of Mr. Horwich's clients here was not privileged.[20]  Indeed, a key players list, identifying individuals listed on a log and their roles, is a routine component of a privilege log prepared in proceedings before this Court. I suspect Plaintiffs were concerned that revealing Mr. Horwich's representation and the Funders' identities would have, when coupled with the timing of various entries on the log, put the Defendants on the scent of arguments that Plaintiffs would prefer Defendants not make and discovery Plaintiffs would prefer Defendants not pursue. Plaintiffs bore the burden of showing that the logged documents were properly withheld as privileged, but presented Defendants with, at most, half the picture of Mr. Horwich's involvement in this case.

---

[18] Dkt. 347, Transcript of June 13, 2024 Oral Argument on Defs.' Mot. To Compel ("Tr.") at 33.

[19] Plaintiffs also failed to explain this important information to the Court. *E.g.*, Tr. at 56-67.

[20] *Khanna v. McMinn*, 2006 WL 1388744, at *37 (Del. Ch. May 9, 2006) ("Moreover, the fact of Wilson Sonsini's representation of Covad during the Certive transaction is not privileged because the identity of one's attorney does not constitute privileged information."); *Gotham P'rs v. Hallwood Realty*, 1999 WL 252377, at *1 (Del. Ch. Mar. 31, 1999) ("Neither the status nor identity of an attorney whose communications are privileged are privileged facts.").

10.     Despite all of this, it is possible that Plaintiffs and the Funders could have shared a common interest, such that privilege between them would have been preserved.  But Plaintiffs failed to identify common interest privilege on their log, suggesting instead that Mr. Horwich was simply a helpful lone wolf.[21]  As a result, Plaintiffs have waived any common interest privilege that could have been asserted as to those documents.[22]  There can be no privilege for any communications between Mr. Horwich and Plaintiffs after May 21, 2018.[23]

11.     As to the communications between Mr. Horwich and Plaintiffs before May 21, 2018, I have, as I noted above, reviewed the documents produced to me *in camera*.  Although privilege may, as a general matter, attach to these documents, it is still the case that the communications must relate to the solicitation or rendering of legal advice to be protected by the attorney-client privilege.  I accordingly address

---

[21] Plaintiffs' log confirms their decision not to identify common interest was intentional, since they chose to identify common interest for one much later entry:  Entry 52, the September 20, 2018 Common Interest and Confidentiality Agreement between Plaintiffs and Litigation Funders.

[22] *See, e.g.*, *Cephalon, Inc. v. Johns Hopkins Univ.*, 2009 WL 5103266, at *3 (Del. Ch. Dec. 4, 2009) ("To the extent [defendant] might contend that aspects of these documents involve matters of common interest . . . the Privilege Log fails to reflect this, and in that respect the entry is inadequate to preserve the privilege.").

[23] My prior decision on Defendants' Motion required production of the Funding Agreement without redaction.  That decision also noted that the Funders are competitors of Defendants. To understand the context of that decision and this one, I believe it is critical also to understand that this matter does not involve what I consider to be a traditional litigation funding arrangement.  Unlike a traditional litigation funder that fronts counsels' fees in exchange for the possibility of a positive return on the investment, the economics of the funding arrangement here ensure the Funders will make no return at all in this action. Instead, the Funders will, at best, simply be repaid.  These facts should make clear how distinguishable the arrangement at issue here is from the traditional litigation funding context.

below the pre-May 21, 2018 documents on Plaintiffs' log that cannot properly be withheld as privileged:

a.  Entry 19 is an email chain between Mr. Kelly and Mr. Horwich that Plaintiffs entirely withheld. The thread begins on a personal note, with Mr. Horwich inquiring after Mr. Kelly. Mr. Horwich asks if he and Mr. Kelly can speak, referencing Mr. Kelly's "choice with respect to the policy." Then Mr. Kelly and Mr. Horwich plan to get lunch. Although the discussions that occurred during Mr. Kelly and Mr. Horwich's phone call and lunch may very well be privileged, the emails setting up those meetings do not convey any legal advice and are not properly withheld as privileged. That Mr. Horwich and Mr. Kelly discussed "the policy" is the level of detail expected on a privilege log, and likewise not privileged.

b.  Similarly, Entry 20 contains an email thread between Mr. Kelly and Mr. Horwich setting up a lunch meeting, which Plaintiffs entirely withheld. There is one line in the first email in the thread conveying privileged information, but the remainder of the thread concerns only plans for when and where the lunch meeting will occur. The sentence beginning with "I think" in Mr. Horwich's April 24, 2018 email may be redacted, but the remainder of the thread cannot properly be withheld as privileged.

c.  Entry 21, which Plaintiffs withheld, does not contain anything of substance at all. The email, from Mr. Horwich to Mr. Kelly, has no text other than Mr. Horwich's signature block. While the email indicates on its face that

10

there was an attachment, no attachment was submitted to the Court for *in camera* review. Based on the documents submitted to me, I cannot say that this document or its attachment are protected by the attorney-client privilege.

d. The withheld email in Entry 23, sent from Mr. Horwich to Mr. Kelly, only informs Mr. Kelly that the email has an attachment and asks for his input. This email does not solicit or convey any legal advice and cannot be withheld as privileged. Entry 23 also attaches a draft complaint, which is not identified on Plaintiffs' privilege log. Instead, the log entry generically refers to the email and attachment as "[e]mail correspondence regarding draft Genworth complaint[,]" without indicating the existence of an attachment. The distinction between conveying a draft complaint and simply discussing one seems, in these circumstances, material. I would have expected the log to disclose that the email included an attachment, and that the attachment was a draft complaint. Despite their less-than-forthcoming log entry, however, I conclude that the draft complaint attached to Entry 23 can properly be withheld.

12. Other than these documents I listed, I conclude that the remaining communications I reviewed *in camera* between Mr. Horwich and Plaintiffs through May 21, 2018, may continue to be withheld.

13. Although I have already determined that no privilege existed between Mr. Horwich and Plaintiffs after May 21, 2018, it is worth noting that Plaintiffs' approach to asserting privilege over these documents was overbroad and seemed, at

11

times, to be unthinking. For example, more than half of the lengthy, multi-page email thread in Entry 30 concerns efforts to schedule a lunch meeting. Even assuming the remainder was privileged, this document clearly could and should have been produced with redactions rather than fully withheld. And Entry 44 is an email reading "[s]ee attached," which in turn attaches advertising material sent from Mr. Horwich to Mr. Pratt. The privilege log withholds the entire document as "AC/WP"[25]—as is claimed for every other log entry too, although it is hard to fathom how that could be so.

14. As to the fourth category of documents, Defendants have argued that communications between Plaintiffs and putative class members are not privileged because the communications withheld by Plaintiffs did not include an attorney and the privilege log entries are insufficient to indicate that the communications related to the advice of counsel. Plaintiffs argue that communications between "co-clients" outside the presence of counsel are privileged where the speaker is conveying the advice of counsel. It is true that a communication that does not include lawyers can nevertheless be privileged if co-clients are "discussing information of a legal nature that they received from a communication that did, in fact, involve [] legal representatives."[26] The nature of the communications between class members, however, is dependent on whether the underlying communication from counsel is privileged.

---

[25] The log's key provides that "AC" means "Attorney-Client" and "WP" means "Work Product."

[26] *3Com Corp. v. Diamond II Holdings, Inc.*, 2010 WL 2280734, at *6 n.33 (Del. Ch. May 31, 2010).

12

15. Defendants raise only two documents that fit into this category, Entries 28 and 31.[27] I will discuss those documents:

a. Entry 28 is an email between Mr. Kelly and Mr. Lavery, forwarding an earlier email from Mr. Horwich to Mr. Kelly. The forwarding email from Mr. Kelly merely reads "[t]his is the email I referred to," and contains no substantive information or legal advice. The underlying email from Mr. Horwich was sent on May 22, 2018. As I have found that no privilege can attach to communications between Mr. Horwich and Plaintiffs after May 21, 2018, this email cannot properly be withheld as privileged.

b. Entry 31 is an email from Mr. Kelly to Mr. Lavery, forwarding an earlier email sent from Mr. Horwich to Mr. Kelly. Neither concerns legal advice, but rather involves discussion around scheduling a meeting between Mr. Kelly, Mr. Lavery, and Mr. Horwich. The fact that Mr. Kelly forwarded an email from Mr. Horwich to another Plaintiff does not make the email immediately privileged. Regardless, the email from Mr. Horwich was sent on June 25, 2018. As I have found that no privilege can attach to communications between Mr. Horwich and Plaintiffs after May 21, 2018, this email cannot properly be withheld as privileged.

16. In addition to compelling the production of documents, Defendants also argue that Plaintiffs should be compelled to answer deposition questions regarding the documents and topics that are the subject of the Motion. Defendants argue that

---

[27] Dkt. 309, Motion at 13 n.6.

Plaintiffs' counsel restricted testimony about these topics indiscriminately, and that much of the blocked questioning did not relate to legal advice at all. I agree that Plaintiffs' counsel's objections were overbroad and prejudiced the Defendants' ability to properly depose Plaintiffs.[28]

---

[28] Plaintiffs' counsel made inappropriate and lengthy speaking objections during depositions in this case. In addition, Plaintiffs' counsel made multiple overbroad privilege objections to cut off questioning that could have elicited non-privileged information. For example, during the deposition of Mr. Kelly, Plaintiffs' counsel repeatedly instructed Mr. Kelly not to answer questions about his communications with other class members after the commencement of litigation, without regard to whether the subject of the conversations was actually privileged. *E.g.*, White Aff. Ex. 14 at 33 ("So I'm going to instruct him not to answer. To the extent your conversations were after the litigation, don't answer."). During Mr. Green's deposition, Plaintiffs' counsel stood by his privilege objection even after Mr. Green provided testimony indicating that his answer to the line of questioning would not have been privileged:

> MR. MC LOUGHLIN: I'm going to object and instruct you not to answer if it's about the litigation on privilege grounds.
> MR. FORAN: On what?
> MR. MC LOUGHLIN: Privilege grounds.
> Q. Is Mr. Hariton a lawyer?
> A. No.
> Q. Are you a lawyer?
> A. No.
> Q. Were you going to Mr. Hariton for legal advice?
> A. No.
> Q. Were you conveying legal advice to Mr. Hariton?
> A. I'm sorry?
> Q. Were you conveying legal advice to Mr. Hariton?
> A. Never. Not at all, no.
> MR. FORAN: You want to revise that instruction?
> MR. MC LOUGHLIN: I don't, I don't.

White Aff. Ex. 17 at 19. This is not to say that communications between class members can never be privileged. For example, communications between the Plaintiffs could be privileged if they were discussing or conveying the advice of counsel. But seemingly unthinking objections and instructions not to answer, without regard to whether the questions seek non-privileged information, are improper.

14

17.    The Court may order a witness to sit for another deposition when the original deposition was hampered by improper or overbroad privilege objections.[29] Defendants must be allowed to depose Plaintiffs again on the limited topics addressed in the Motion.  Because the need for additional depositions stems from Plaintiffs' counsel's overbroad privilege objections, Plaintiffs must bear the burden of reasonable costs for the repeat depositions.

18.    In sum, the remaining aspects of the Motion following my August 21, 2024 Memorandum Opinion are resolved as follows:  Plaintiffs must produce Entries 19, 20, 21, 23, 28, and 31, along with any communications involving Mr. Horwich after May 21, 2018 otherwise identified on Plaintiffs' privilege log.  Plaintiffs must also sit for additional depositions consistent with this Order, with reasonable costs to be borne by Plaintiffs.


                                        */s/ Nathan A. Cook*
                                        Vice Chancellor Nathan A. Cook

---

[29] *See, e.g., In re Appraisal of Stillwater Mining Co.*, C.A. No. 2017-0385-JTL, at 30-31 (Del. Ch. June 13, 2018) (TRANSCRIPT) (ordering another deposition of a witness where "the deposition was hampered by the privilege claim," but limiting the second deposition to the subject matter of the improper privilege claim because "[t]he deposition is not a total redo.").