**Charles F. MOYER, Defendant Below, Appellant,**

v.

**Donna L. MOYER, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Nov. 26, 1991.
Decided: Jan. 3, 1992.

William M. Chasanov of Brown, Shiels & Chasanov, Georgetown, for appellant.

Richard E. Berl, Jr. of Hudson, Jones, Jaywork, Williams & Liguori, Georgetown, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

CHRISTIE, Chief Justice:

In this case the Court is called upon to decide under what circumstances an attorney, who negotiated a settlement agreement which failed in performance, may be called to testify as to communications the attorney had with a former client over the objection by the former client that such testimony would violate the attorney/client privilege.

Appellant/respondent below, Charles F. Moyer, has appealed from an order of the Family Court dated January 15, 1991 which granted the motion of appellee/petitioner below, Donna L. Moyer, seeking the specific performance of an alleged oral property settlement agreement. Appellant also ap-

peals from an order of the Family Court dated April 3, 1991 which ordered appellant to pay appellee's legal fees related to the property settlement litigation. In its decision dated January 15, 1991, the Family Court ruled that: 1) appellant had authorized his former counsel to bind him to an "agreement settling marital rights" with appellee; and 2) there was clear and convincing evidence of part performance by appellant of an oral property settlement agreement which barred the appellant from asserting a defense based on the statute of frauds. Appellant contends that the Family Court erred by compelling his former counsel to testify, over appellant's objection, regarding "confidential communications" which he had with his former counsel. Appellant further contends that these "confidential communications" were protected and should have remained protected by the attorney-client privilege. D.R.E. 502; Delaware Lawyers' Rules of Professional Conduct Rule 1.6. We agree that some of the testimony which appellant's former attorney was required to give was privileged, and therefore, the decision of the Family Court must be reversed.

## I.

After the parties were divorced on May 11, 1989, they entered into negotiations in regard to a property settlement. An ancillary property division hearing was scheduled for March 13, 1990. Appellant was represented by Christine Tunnell, Esquire, who met with appellant approximately once a month during this period. Prior to the property division hearing, opposing counsel conducted a series of telephone conferences and exchanged confirmatory letters containing various proposals and counter proposals. On March 12, 1990, counsel for the parties allegedly reached an agreement, the terms of which were set forth in a document titled "agreement settling marital rights". As a result of the Family Court order compelling her to testify and over appellant's objection, Tunnell testified that on that date she explained the terms of the proposed "agreement settling marital rights" to her client, the appellant, by telephone and personally in her office, and

appellant made no objection at that time to the terms as they were then explained but he did not inspect a written copy of the agreement. Appellant understood that Tunnell would be informing the Family Court that day that an agreement had been reached and that a written agreement signed by the parties was to be entered on the record the next day. However, appellant did not read the proposed agreement until the following day.

During the evening of March 12, 1990, appellant visited the former marital home to finalize an itemized list of personal property remaining in the home which he would be removing. This itemized list, the contents of which had been previously discussed by the parties, was to be incorporated by reference into the written settlement agreement. However, during the visit appellant became aware that certain items had not been allocated to him and/or had not been assigned a value pursuant to the parties' prior discussions. A disagreement then developed, and the parties were unable to reach an agreement on these items. In addition, appellant testified that when he finally saw the proposed written agreement on March 13, 1990, he became aware that the proposed agreement: 1) failed to grant him the right to claim a dependency tax exemption on at least one of his children; and 2) ordered him to assign his interest in a 1978 Pontiac Grand Prix to appellee even though she already held record title. In addition, appellant testified that based upon his calculations, the proposed agreement would result in an eighty/twenty split in the marital assets rather than the sixty/forty split that Tunnell apparently had told him it would be. He also testified that he did not authorize Tunnell to accept or enter into an agreement which would entail an eighty/twenty split. Based upon these alleged flaws in the proposed written settlement agreement, appellant refused to sign the document. Thereafter, appellant retained new counsel to represent him in this matter.

Several weeks later when appellee learned that the agreement had not been signed, she filed a petition for a rule to

show cause why the alleged oral property settlement agreement between the parties should not be enforced. Appellant contends that Tunnell lacked the authority to enter into and bind him to the oral settlement agreement. A hearing on the matter was held on October 30, 1990, after the parties through their respective attorneys filed memoranda of law regarding the authority of the trial court to compel appellant's former attorney, Tunnell, to testify as to: 1) her understanding of the authority which she had from her former client; and 2) her belief regarding his alleged verbal agreement with the terms of the settlement agreement. Over appellant's objection, the Family Court ordered Tunnell to testify:

> as to her basis for her belief that there was authorization to enter into the proposed agreement. She will not be testifying as to any advice or consultation that she gave appellant, but rather [her testimony will be] limited to [the exchange of the correspondence] between the parties and the ultimate belief by her that an agreement had been reached, and again, not as to any advice or consultation between [her and her client].

On January 15, 1991, the Family Court issued an order granting appellee's motion seeking the specific performance of the alleged property settlement agreement.[1] It is that decision which is before this Court on appeal.

1. This order was modified by a subsequent order dated January 28, 1991 which directed appellant to pay the amount which was in arrears on alimony and to pay a mortgage application fee for appellee. In an order dated April 3, 1991, the Family Court also directed appellant to pay appellee's legal fees related to the property settlement litigation.

2. A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication. D.R.E. 502(a)(5).

3. D.R.E. 502(b) states:

   (b) General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

## II.

Appellant contends that the Family Court erred as a matter of law when it compelled Tunnell to testify "as to her basis for her belief that there was authorization to enter into the proposed agreement" because such testimony was in violation of the attorney/client privilege. Appellant also contends that although the parameters had been set by the Family Court regarding the permissible scope of Tunnell's testimony, the testimony elicited from Tunnell on direct examination went beyond those parameters and violated both the court order and the attorney/client privilege. Under the parameters set by the Family Court, Tunnell's testimony was to be limited to the belief she had as to her authority and the correspondence exchanged between the lawyers for the parties.

In response, appellee contends that the correspondence had lost its status as "confidential communications"[2] protected by the attorney/client privilege. D.R.E. 502.[3] Appellee also contends that even if Tunnell's testimony included some matters which were protected by the attorney/client privilege, appellant waived the privilege because his counsel subsequently cross-examined Tunnell and because appellant himself testified later in the trial.[4] We rule that appellee's contention as to the limited scope of the privilege was properly

4. D.R.E. 510 states:

   A person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged.

adopted by the trial court as to only some of Tunnell's testimony, but appellee's contention that appellant waived his attorney/client privilege on account of testimony later presented is without merit.

Delaware has long recognized that the attorney/client privilege "protects the communications between a client and an attorney acting in his professional capacity where the communications are intended to be confidential, and the confidentiality is not waived." The privilege serves "to foster the confidence of the client and enables him to communicate without fear in order to seek legal advice." *Riggs Nat. Bank of Washington, D.C. v. Zimmer*, Del.Ch., 355 A.2d 709, 713 (1976). The current scope of the privilege in Delaware is defined in D.R.E. 502(b) which may be paraphrased as it applies to the present case as follows: "the privilege extends to a (1) communication, (2) which is confidential, (3) which was for the purpose of facilitating the rendition of professional legal services to the client, (4) between the client and his attorney." *Ramada Inns, Inc. v. Dow Jones & Co., Inc.*, Del.Super., 523 A.2d 968, 970 (1986).

In this case, we are presented with the question whether an attorney, who negotiated a settlement agreement which failed in performance, may testify thereto over the objection of his former client that such testimony would violate the attorney/client privilege. The courts which have considered the question have concluded that the privilege does not apply to communications made by an attorney to a third party in connection with the negotiation process and the attorney may be examined as to such communications. *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 389 (D.D.C.1978). *See State Ex Rel. North Pacific Lumber Co. v. Unis*, 282 Or. 457, 579 P.2d 1291, 1293 (1978); Annotation, Admissibility of Evidence of Unperformed Compromise Agreement, 26 A.L.R.2d 858, 864–65 (1952).

■ In the case of *Baum v. Denn*, 187 Or. 401, 211 P.2d 478, 480 (1949), the Court ruled that where a lawyer was expressly authorized by his client to communicate to opposing counsel matters to be considered in negotiations for settlement of a controversy, such matters were not "confidential communications" protected by the attorney/client privilege. "As said in 58 Am. Jur., Witnesses, 274 § 419: 'Communications made to an attorney for the purpose of being conveyed by him to others are stripped of the idea of a confidential disclosure and, therefore, are not prohibited.'" *Id.* Thus, the privilege does not apply to communications between an attorney and his client where the circumstances indicate that the client did not intend the communication to remain confidential, and therefore, the attorney may be examined as to such communications. *E.g., In re Grand Jury Proceedings*, 727 F.2d 1352, 1356–57 (10th Cir.1984); *Ramada Inns, Inc. v. Dow Jones & Co., Inc.*, Del.Super., 523 A.2d 968, 972 (1986); *Riggs Nat. Bank of Washington, D.C. v. Zimmer*, Del.Ch., 355 A.2d 709, 713 (1976). In the case of *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir.1984), the court stated:

> In order to be privileged, a communication must be made in confidence of the relationship and under circumstances from which it may reasonably be presumed that it will remain in confidence. The protection does not extend to a communication which cannot properly be termed the subject of a confidential disclosure. And a statement or communication made by a client to his attorney with the intent and purpose that it be communicated to others is not privileged.

The burden of proving that the privilege applies to a particular communication is on the party asserting the privilege. *E.g., United States v. Landof*, 591 F.2d 36, 38 (9th Cir.1978). We agree with these statements of the law.

■ In applying these rulings, we rule that the relevant oral statements made between Tunnell, and her opposing counsel, or between Tunnell and the Family Court are not privileged. It follows that the contents of the correspondence between Tunnell, opposing counsel, and the Family Court are not privileged under the circumstances of this dispute, and Tunnell could properly testify as to these communica-

tions. In addition, we agree that Tunnell could properly testify regarding communications she had with her client if it is clear that appellant did not intend what was said to be confidential.

■ However, we find that the Family Court erred as a matter of law by admitting testimony elicited from Tunnell on direct examination which went beyond the exceptions to the attorney/client privilege outlined herein. Tunnell's testimony as to the reasons her client gave her for his failure to sign the proposed agreement and her testimony as to the specific advice she and the attorneys in her firm gave to appellant after he refused to sign the proposed agreement were among the violations of the attorney/client privilege which took place in this case. This testimony clearly went beyond the scope of any information Tunnell was expected to disclose to others or authorized by her client to disclose. The information should have been regarded as confidential and privileged.

■ We also find that under the circumstances neither the subsequent cross-examination of Tunnell by appellant's counsel nor appellant's subsequent testimony on matters which would otherwise have been protected by the attorney/client privilege resulted in a waiver of his privilege. Prior to Tunnell's testimony, appellant properly objected on the grounds that Tunnell's testimony would be in violation of the attorney/client privilege, D.R.E. 502, and in violation of Rule 1.6 of the Delaware Lawyers' Rules of Professional Conduct. However, the Family Court overruled most of his objections. Once faced with the order of the Family Court under which Tunnell was compelled to testify as to matters protected by the attorney/client privilege, we find that appellant could cross-examine Tunnell and testify himself regarding otherwise privileged communications in rebuttal without waiving the basic objections earlier asserted by him. Under the circumstances present here, appellant cannot be said to have retroactively waived his privilege by these subsequent acts. If the privilege was to be waived, it was for appellant to make such waiver before his opponent

was free to introduce any of the privileged evidence. Since we find that testimony elicited from Tunnell in violation of appellant's attorney/client privilege is likely to have formed a part of the basis for upholding the alleged property settlement agreement, the decision of the Family Court is reversed. This case is remanded to the Family Court for a new trial, before a different Family Court judge, to determine whether a valid property settlement agreement existed.

On retrial, appellant may not successfully invoke the attorney/client privilege to prevent Tunnell from testifying regarding communications she had with opposing counsel or regarding relevant communications she had with her former client to the extent that such communications were instructions or agreements as to positions Tunnell was authorized to assert as his attorney. We note that in order for appellee to prevail, she must satisfy her burden of proving the existence of a binding oral settlement agreement. However, we also note that the Court of Chancery correctly stated the law in *Aiken v. National Fire Safety Counsellors*, Del.Ch., 127 A.2d 473, 475 (1956), when it ruled that: "an attorney of record in a pending action who agrees to the settlement of the case is presumed to have lawful authority to make such an agreement. But it is only a presumption that the client may rebut." It appears, therefore, that in order for appellant to rebut this presumption he may again attempt to prove that Tunnell lacked the authority to bind the appellant to the alleged oral settlement agreement. In so doing, appellant may decide that it is necessary to waive his attorney/client privilege and testify regarding confidential communications he had with Tunnell. If appellant waives the privilege, then both Tunnell and appellant will be subject to full examination in regard to all relevant communications.

Because a new trial is to take place, we announce that: 1) we find no error in the Family Court's ruling that the statute of frauds finds no application to the alleged agreement in this case; and 2) the issue of

attorneys' fees must be reexamined after a decision on the merits.