# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE AMERICAN BOTTLING
COMPANY,

        Plaintiff,

        v.

MIKE REPOLE and BA SPORTS,
NUTRITION, LLC,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N19C-03-048 AML CCLD

Submitted: May 1, 2020
Decided: May 12, 2020

## ON DEFENDANTS' MOTION TO COMPEL: GRANTED

## <u>MEMORANDUM OPINION</u>

Garrett B. Moritz, Esquire, Anne M. Steadman, Esquire, of ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware, and Robert C. Walters, Esquire, Russell H. Falconer, Esquire, Megan Z. Hulce, Esquire, of GIBSON DUNN & CRUTCHER LLP, Dallas, Texas, *Attorneys for Plaintiff The American Bottling Company.*

A Thompson Bayliss, Esquire, Daniel J. McBride, Esquire, of ABRAMS & BAYLISS LLP, Wilmington, Delaware, and David H. Bernstein, Esquire, Jyotin Hamid, Esquire, Jared I. Kagan, Esquire, Matthew J. Petrozziello, Esquire, of DEBEVOISE & PLIMPTON LLP, New York, New York, *Attorneys for Defendants Mike Repole and BA Sports Nutrition, LLC.*

Paul J. Lockwood, Esquire, Kaitlin E. Maloney, Esquire, of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware, *Attorneys on behalf of non-party JAB Holding Company.*

**LeGROW, J.**

This litigation arises from the defendants' termination of their distribution agreement with the plaintiff after the plaintiff's parent company merged with one of its competitors, Keurig. As is typical, the parties to the merger conducted due diligence, and Keurig retained advisors and counsel to assist in that effort. After the merger agreement was signed, but before the transaction closed, Keurig and its advisors shared some allegedly privileged communications and materials with the plaintiff's parent and sought the parent's input on those materials. The distribution agreement's termination clause and any associated termination fee were among the subjects discussed in those communications.

The defendants now seek to compel production of those privileged communications on the grounds, *inter alia*, that Keurig waived its privilege when it shared the communications and materials with the plaintiff's parent. The plaintiff, however, argues the common interest doctrine applies because the parties shared a common legal interest in understanding and protecting the merged company's rights under the distribution agreement. The motion requires this Court to determine whether that common interest primarily is a legal one, thereby falling within the common interest doctrine. I conclude the plaintiff has not carried its burden of showing the shared interest primarily is legal, and I therefore grant the motion to compel.

## FACTS AND PROCEDURAL BACKGROUND

The plaintiff, The American Bottling Company ("ABC"), filed this action against BA Sports Nutrition, LLC ("Body Armor") and its Chief Executive Officer, Mike Repole, after Body Armor terminated its distribution agreement with ABC. The parties' distribution agreement gave ABC the exclusive right to distribute Body Armor's sports drink. ABC was a subsidiary of Dr Pepper Snapple Group, Inc. ("DPSG"), and ABC – along with other DPSG subsidiaries – had distribution agreements with several beverage companies, which DPSG collectively referred to as the "Allied Brands."

In January 2018, DPSG entered into a merger agreement with Keurig Green Mountain ("Keurig"). The merger resulted in a new company, Keurig Dr Pepper Inc. As the parties negotiated the merger and prepared to close the transaction, Keurig and its parent company, JAB Holding Company ("JAB"), retained Ernst & Young to conduct due diligence on Keurig's behalf and retained the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to represent Keurig during the transaction.

Body Armor's distribution agreement with ABC contained a clause that required ABC to obtain Body Armor's approval before ABC transferred its duties and privileges under the agreement, including any transfer by "merger, consolidation, reorganization or similar event, [or] change in the management or

2

control of [ABC][.]"[1] If such a transfer occurred without Body Armor's approval, which it could not unreasonably withhold, Body Armor was entitled to terminate the distribution agreement "with cause," thereby avoiding a substantial termination fee that Body Armor would owe if it terminated the distribution agreement "without cause."[2]

Approximately a month after the Keurig-DPSG merger closed, Body Armor terminated the distribution agreement with ABC. ABC then filed this action. The parties' dispute centers around, *inter alia*, whether the Keurig-DPSG merger resulted in a change of control that triggered the termination clause in the ABC-Body Armor distribution agreement.

During discovery, ABC inadvertently produced two documents that it later "clawed-back" as privileged. Those documents, and several related documents, are the subject of the present dispute (the "Disputed Documents"). The Disputed Documents consist of (1) drafts of a chart that Skadden prepared during due diligence and that Ernst & Young sent to DPSG in order to obtain additional information to complete due diligence; and (2) various emails between Ernst & Young and DPSG executives and in-house counsel exchanging drafts of the chart and discussing the requested information. ABC's descriptions of these documents

---

[1] Defs.' Mot. to Dismiss, Ex. A § 10.2.
[2] *See id*. § 11.3.

3

and its arguments in support of the asserted privilege have shifted over time. In an earlier version of its privilege log, ABC described the chart as a "[c]hart seeking legal advice regarding KDP transaction."[3] The current version of ABC's log describes the chart as "[c]onfidential draft chart conveying legal advice from outside counsel (Skadden) and seeking information requested by Skadden for purposes of providing legal advice to JAB regarding the terms of agreements with Allied Brands."[4]

At the time the Disputed Documents were created, DPSG and Keurig had signed the merger agreement, but the transaction had not closed. ABC contends the documents in question nonetheless are privileged because DPSG and JAB/Keurig shared a common legal interest in "evaluating their rights under the Allied Brand agreements and taking any available steps to protect those rights."[5] Body Armor contends ABC has not met its burden of showing the Disputed Documents are privileged, arguing the common interest ABC identified is a commercial interest, rather than a legal one. The parties briefed and argued the motion.[6] At the

---

[3] *See* Defs.' Mot. to Compel Produc. of Non-Privileged Ernst & Young Due Diligence Docs. (hereinafter "Mot."), Ex. K Index No. 282.

[4] Pl.'s Resp. in Opp'n to Defs.' Mot. to Compel Skadden Chart Provided to Ernst & Young (hereinafter "Resp."), Ex. C Index No. 282/601. The parties have spilled considerable ink on the question of whether ABC waived privilege by producing inadequate logs or log descriptions in its multiple privilege log iterations. Having concluded that the documents in question are not privileged because the parties did not share a common legal interest, the waiver question is moot.

[5] Resp. ¶ 18.

[6] ABC offered to produce some of the emails under a proposed non-waiver order entered under Delaware Rule of Evidence 510(f). ABC's proposed production, however, did not include the

4

conclusion of the argument, I indicated I thought it unlikely that the Disputed Documents were privileged, but I ordered ABC to produce the documents for *in camera* review out of an abundance of caution. After considering the parties' arguments and reviewing the Disputed Documents, it is plain Keurig waived any privilege by sharing the charts with DPSG. I therefore grant Defendants' motion.

## ANALYSIS

Parties to litigation may obtain discovery into "any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"[7] A party who withholds otherwise relevant documents on the basis of privilege bears the burden of establishing the factual basis for the privilege.[8] To meet that burden, the withholding party must establish that the communication was intended to be confidential and was made (i) between privileged persons, and (ii) for the purpose of seeking, obtaining, or delivering legal advice.[9]

Communications between a lawyer and a client, for the purpose of seeking or providing legal advice, are privileged. Communications with counsel for other purposes, however, such as obtaining business or personal advice, are not

---

various drafts of the chart that is at the center of the parties' dispute and was attached to several of the emails ABC was willing to produce under Rule 510(f). Defendants did not agree to a Rule 510(f) order, and no such order is necessary or appropriate in light of my ruling here.

[7] Super. Ct. Civ. R. 26(b)(1).

[8] *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992).

[9] *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 402332, at *5 (Del. Super. Feb. 12, 2009).

5

privileged.[10] Additionally, where an attorney-client communication intentionally is shared with a third party, the communication no longer is privileged unless the third party also is a "privileged person."[11] For example, in the context of the transaction at issue, JAB's or Keurig's communication of privileged information to Ernst & Young could not be said to destroy the privilege because Ernst & Young was one of Keurig's advisors working to provide advice relating to the transaction.[12] The question before the Court, however, is whether sharing JAB's privileged communications with DPSG, the other party to the merger agreement, breached the confidential nature of the information and thereby waived the privilege.[13]

Although sharing privileged communications with a third party generally destroys the communication's confidentiality, the "common interest doctrine" recognizes that privilege is not waived in communications by a client or his lawyer with another lawyer who is representing another person "in a matter of common interest[.]"[14] That is, the privilege holder may communicate privileged information

---

[10] *AM Gen. Holdings LLC v. Renco Group, Inc.*, 2013 WL 1668627, at *2 n.8 (Del. Ch. Apr. 18, 2013).

[11] D.R.E. 502(a)(2) ("A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.").

[12] *3Com Corp. v. Diamond II Holdings, Inc.*, 2010 WL 2280734, at *4, 6 (Del. Ch. May 31, 2010); *Jedwab v. MGM Grand Hotels, Inc.*, 1986 WL 3426, at *2 (Del. Ch. Mar. 20, 1986).

[13] In addition to the common interest argument addressed above, Defendants also argued that the chart and the related communications never were privileged because they did not seek or convey legal advice. Having concluded that any privilege that existed was waived, I do not reach this alternate basis for the motion.

[14] D.R.E. 502(b)(3).

to a third party without waiving the privilege if the privilege holder and third party have a common interest.[15] To maintain the privilege, however, the common interest must "involve primarily legal issues, rather than relate to a common interest in a commercial venture."[16] Again, the party claiming the privilege has the burden of demonstrating the common interest and its predominantly legal nature.[17]

ABC's privilege log describes the chart and email communications as "conveying legal advice from [JAB's outside counsel]" and "seeking information requested [by JAB's counsel] for purposes of providing legal advice to JAB regarding the terms of agreements with Allied Brands."[18] These descriptions do not themselves explain the common interest that ABC contends JAB and DPSG shared. With its response in opposition to the motion, ABC also submitted a declaration by Sean C. Doyle, Esquire, a Skadden attorney who represented JAB and Keurig in the merger transaction (the "Doyle Affidavit").[19] In that affidavit, Doyle averred that

[15] *In re Lululemon Athletica Inc. 220 Litig.*, 2015 WL 1957196, at *9 (Del. Ch. Apr. 30, 2015).
[16] *Id.*; *see also Titan Inv. Fund II, LP v. Freedom Mortg. Corp.*, 2011 WL 532011, at *4-5 (Del. Super. Feb. 2, 2011); *In re Quest Software Inc.*, 2013 WL 3356034, at *4 (Del. Ch. July 3, 2013).
[17] *Quest Software*, 2013 WL 3356034, at *4.
[18] Resp., Ex. C.
[19] Mr. Doyle actually authored two declarations. After the hearing on the motion, JAB submitted to the Court a second declaration. JAB urges the Court to consider this second declaration, which purportedly "include[s] testimony on the joint interest between signing and closing[.]" Letter from P. Lockwood, Esq. to the Court dated May 1, 2020, at 2. Although JAB separately was represented at the hearing and was given an opportunity to argue against the motion, JAB contends it did not submit this second declaration until after the hearing because it "had not understood the facts [on the joint interest] to be in dispute." *Id*. First, the assertion that JAB was unaware of the factual dispute is, at best, prevaricating. ABC's response and Body Armor's reply in support of the motion both directly engaged on the factual issue of common interest. Second, the belated declaration, from the same affiant who submitted a declaration in support of ABC's response, is consummate

7

"Keurig directed Skadden to assist [Ernst & Young] with certain aspects of [due] diligence that included legal analysis, including analyzing what payments, if any, would be payable pursuant to various termination provisions in the Allied Brands distribution agreements if those termination provisions were triggered by the Merger."[20] Doyle stated that Skadden prepared an analysis of the termination clauses and termination fee provisions that might be triggered, and it sought certain information from DPSG to complete that analysis.[21] As with ABC's privilege log, the Doyle Affidavit describes JAB's privilege but does not describe the common interest between JAB/Keurig and DPSG.

ABC's response to the motion identifies the shared interest as "a common legal interest in evaluating their rights under the Allied Brand agreements and taking any available steps to protect those rights."[22] ABC argues the legal analyses the parties exchanged "furthered that common interest by enabling Skadden's analysis of those issues."[23]

---

"sand-bagging," which Delaware courts do not condone. *See, e.g., Spear v. Air & Liquid Sys. Corp.*, 2014 WL 7150472, at *1 (Del. Super. Dec. 4, 2014); *Wimbledon Fund LP-Absolute Return Fund Series v. SV Special Situations Fund LP*, 2011 WL 6820362, at *4 (Del. Ch. Dec. 22, 2011). JAB, either by itself or through ABC, had more than ample opportunity to submit this information before the hearing so that Body Armor properly could respond to it. JAB waived its opportunity to do so, and the Court therefore will not consider the second Doyle declaration.

[20] Resp., Ex. B Decl. of Sean C. Doyle (hereinafter "Doyle Aff.") ¶ 3.

[21] *Id.* ¶¶ 4-5.

[22] Resp. ¶ 18.

[23] *Id.*

Although Keurig and DPSG had not yet merged at the time of these communications, Delaware case law recognizes that between the time a merger agreement is signed and the time it closes, the parties to the transaction may share certain common interests. For example, in *3Com Corp. v. Diamond II Holdings, Inc.*, the Court of Chancery held that two companies to an imminent merger had a common interest in seeking regulatory approval and seeing the merger to its completion.[24] The parties' interests were not, however, aligned for all purposes.[25] In addition, even if parties to an agreement share an interest between signing and closing, that interest must primarily be legal in order to fall within the common interest doctrine.[26] This is where ABC's asserted privilege ultimately falls flat.

Several Delaware cases have explored the difference between a common interest that primarily is commercial as opposed to one that primarily is legal. In *Rembrandt Technologies, L.P. v. Harris Corp.*, the Court of Chancery held that parties who formed a partnership to exploit and enforce a patent, including enforcement through litigation, had a common legal interest.[27] The *Rembrandt* Court found that the parties' shared legal interest was demonstrated through several affidavits submitted with the motion along with agreements the parties signed

---

[24] 2010 WL 2280734, at *8.

[25] *See id.* (two companies to a merger that had not yet closed had adverse interests in negotiating a side letter and in determining responsibility for the merger agreement's termination).

[26] *Titan*, 2011 WL 532011, at *4.

[27] 2009 WL 402332, at *7.

memorializing their partnership and their intent to maintain confidentiality.[28] Likewise, in *In re Lululemon Athletica Inc. 220 Litigation*, the Court of Chancery held that the corporation and its founder shared a common legal interest when they exchanged privileged communications for the purpose of responding to a press inquiry about the founder's stock trades.[29] The Court reasoned that the corporation and founder's shared interest primarily was legal, as opposed to commercial, because they were faced with questions of potential wrongdoing and coordinated their response to the press inquiry "in the reasonable anticipation that litigation might ensue in which the content of their responses might be subject to scrutiny."[30]

In contrast, this Court has held that privileged information shared during negotiations between two prospective partners regarding the terms of their partnership did not fall within the common interest doctrine.[31] The privileged information related to one partner's agreement to secure funding for a proposed warehouse facility that would provide capital to a third party. The *Titan* Court reasoned that the prospective partners' shared commercial objective was not sufficient to fall within the common interest doctrine, and the partner's argument that the two entities "shared a common legal interest in receiving legal advice on the

---

[28] *Id.*

[29] 2015 WL 1957196, at *9.

[30] *Id.*

[31] *Titan*, 2011 WL 532011, at *4-5.

10

issues concerning the transaction" was not sufficient to invoke the doctrine's protections.[32]

Similarly, in *Glassman v. Crossfit, Inc.*, the Court of Chancery held the common interest doctrine did not apply to communications between the 50% owner of Crossfit, Inc. and the private equity firm to which she agreed to sell her shares.[33] Crossfit, Inc. was owned by its founders, a husband and wife who were seeking a divorce in Arizona. The wife signed an agreement to sell her stake in Crossfit to a private equity company, but that sale was contingent on receiving the Arizona court's approval. The wife argued her post-signing communications with the private equity company fell within the common interest doctrine because they shared legal interests in (1) obtaining the Arizona court's approval for the transaction, and (2) defending themselves against possible legal action by Crossfit's other owner.[34] The *Glassman* Court held the wife did not carry her burden of establishing the privilege because she gave ambiguous descriptions of the documents and failed to present evidence that the privileged communications were shared for the purpose of facilitating a joint legal strategy in possible future litigation.[35]

---

[32] *Id*. at *5.
[33] 2012 WL 4859125 (Del. Ch. Oct. 12, 2012).
[34] *Id*. at *3.
[35] *Id*. at *3-4.

11

As in *Titan* and *Glassman*, ABC's argument that JAB/Keurig and DPSG shared a common interest in evaluating and protecting their rights under the Allied Brand distribution agreements does not satisfy ABC's burden of demonstrating that the shared interest primarily was legal, rather than commercial. The parties may well have shared an interest in positioning the post-merger entity so as to capitalize on the distribution agreements. But even if one aspect of that interest was avoiding litigation, the primary focus of the interest plainly was commercial. As the *Titan* Court held, "[i]t is of no moment that the parties may have been developing a business deal that included as a component the desire to avoid litigation."[36] ABC simply has not presented any compelling evidence that the parties' shared interest primarily was legal,[37] and the Court's *in camera* review of the documents shows that the focus of the communications was the parties' commercial interest, even though in-house and outside counsel provided input on the drafts.

---

[36] 2011 WL 532011, at *4; *see also Glassman*, 2012 WL 4859125, at *4 ("[C]ommunications about a business deal, even when the parties are seeking to structure a deal so as to avoid the threat of litigation, will generally not be privileged under the common-interest doctrine.").

[37] ABC actually did not submit any *evidence* regarding the common interest. As set forth above, the Doyle affidavit and privilege log addressed JAB's privilege, but not the shared interest between JAB/Keurig and DPSG. ABC's entire opposition to the motion rested on attorney argument. *Cf. Rembrandt*, 2009 WL 402332, at *7 (party claiming common interest met its burden by submitting affidavits of the parties involved in the communications and confidentiality agreements entered contemporaneously with those communications). Although the existence of contemporaneous agreements is not a prerequisite to finding that a common interest existed, a party invoking the common interest doctrine will have a difficult time meeting its burden without some evidence to support it.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel is **GRANTED.**
ABC shall produce the Disputed Documents within three business days. **IT IS SO
ORDERED.**