**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

THERMO FISHER SCIENTIFIC PSG CORPORATION,

      Plaintiff and Counterclaim-Defendant,

      v.

ARRANTA BIO MA, LLC,

      Defendant and Counterclaim-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2022-0608-NAC

**ORDER GRANTING IN PART DEFENDANT'S
RENEWED MOTION TO COMPEL**

WHEREAS:

1. This matter involves bifurcated litigation, a portion of which relating to certain non-compete claims between Plaintiff and Defendant has been expedited. I held trial on the expedited portion of the action on December 15 and 16, 2022. The non-expedited portion of the litigation is set for trial in mid-September 2023.

2. On November 7, 2022, Defendant filed a motion to compel based on, among other things, multiple deficiencies in Plaintiff's privilege log. Plaintiff elected to stand on its log and filed its opposition on November 11, 2022. Defendant filed its reply on November 14, 2022.

3. I heard argument on November 15, 2022, and entered an order that evening granting Defendant's motion in part. Although troubled by the many

categories of deficiencies identified by Defendant, I declined to enter a broader production ruling at that time based on the arguments presented.

4. On November 20, 2022, Plaintiff filed a motion for reargument of my November 15 order. In connection with the motion for reargument, Plaintiff submitted a revised log. I directed that Defendant file any opposition by noon on Wednesday, November 23, 2022, the day before Thanksgiving. I then issued a letter decision on Monday, November 28, 2022, largely denying the motion for reargument. I found several aspects of the revised log concerning. For purposes of this order, however, I note only that the November 15 order directed the production of documents underlying approximately 560 log entries. Plaintiff's revised log voluntarily dropped nearly 20% of those entries. As I noted at the time, "[i]f that is meant to be comforting, it is not. That error rate is, if anything, eyebrow-raising at this stage." D.I. 171 at 8.

5. Plaintiff produced the documents required by the November 15 order on the evening of November 29, 2022.

6. With the benefit of the newly produced documents, Defendant filed a Renewed Motion To Compel Relating To Plaintiff's Wrongful Privilege Designations on December 6, 2022, and an amended version of the motion on December 8, 2022 (the "Motion"). On December 12, 2022, Plaintiff filed its opposition to the Motion.

7.     I heard argument on the Motion on December 14, 2022.  As a result of my ever-increasing concerns with Plaintiff's log, at the conclusion of argument I directed Plaintiff to submit for *in camera* review 100 documents of Defendant's choosing from the remaining entries on Plaintiff's log which were not the subject of my November 15 production order.[1]

8.     I have completed my *in camera* review and am prepared to rule on Defendant's Motion.

NOW, THEREFORE, the Court having carefully considered the Motion papers and oral argument on the Motion, and having conducted an *in camera* review of 100 documents following argument, IT IS HEREBY ORDRED, this 18th day of January 2023, as follows:

1.     In withholding otherwise responsive documents on the basis of privilege, the party claiming privilege—Plaintiff in this instance—bears the burden to show why and in what way the information requested is privileged. *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992).  Plaintiff must "provide 'precise and certain reasons'" why privilege applies for each document over which privilege is claimed.

---

[1] References to entries on Plaintiff's log refer to those entries included in the revised log submitted by Plaintiff in connection with its motion for reargument filed on November 20, 2022.  In its revised log, Plaintiff identifies documents by document number using the following format: "Patheon-Priv-[Document Number]."  For ease of reading, when referencing documents included on Plaintiff's log, I omit "Patheon-Priv" and instead refer to such documents with the form "Entry [Document Number]."

*Mechel Bluestone, Inc. v. James C. Justice Cos., Inc.*, 2014 WL 7011195, at *9 (Del. Ch. Dec. 12, 2014) (quoting *Int'l Paper Co. v. Fireboard Corp.*, 63 F.R.D. 88, 93 (D. Del. 1974)); *accord Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *8 (Del. Ch. Aug. 5, 2009); *Deutsch v. Cogan*, 580 A.2d 100, 107 (Del. Ch. 1990); *Reese v. Klair*, 1985 WL 21127, at *5 (Del. Ch. Feb. 20, 1985). The requirements for preparing a satisfactory log under Delaware law are "readily established and easily available." *Klig v. Deloitte LLP*, 2010 WL 3489735, at *5 (Del. Ch. Sept. 7, 2010) (TRANSCRIPT). They are even discussed in this court's Guidelines for Persons Litigating in the Court of Chancery.

2.     Defendant argues that Plaintiff's privilege log is deficient for three principal reasons. First, Defendant claims that it has presented ample evidence that Plaintiff severely over-designated information as privileged and/or the subject of work product protection. Defendant argues that, on the basis of such egregious over-designation, Plaintiff improperly withheld vast swathes of responsive information from production. Second, Defendant claims that Plaintiff either wrongfully withheld purportedly privileged documents instead of producing redacted versions or grossly over-redacted documents that contained only some privileged information. Third, Defendant asserts that Plaintiff's log descriptions are so generic and formulaic that Defendant is not able to make any meaningful determinations as to whether

4

individual documents are properly withheld or the appropriate subject of challenge. Furthermore, Defendant asserts that the log's descriptions are materially inaccurate.

3.     On the basis of these broad deficiencies, Defendant asks that I enter an order directing Plaintiff to produce, without redaction, all of the documents identified on Plaintiff's privilege log. At the outset, I note that I approach any such request for relief with a great deal of hesitancy and caution. I also recognize, however, that hiding non-privileged information on a privilege log poses a risk of severe prejudice to the party subjected to discovery abuse. It is therefore incumbent on me to consider Defendant's assertions carefully and, if appropriate, award the relief requested.

4.     The risks of prejudice are further compounded in this litigation for two reasons. First, this is expedited litigation. Participation in expedited litigation—particularly complex expedited litigation of the sort that routinely occurs in this Court—requires that parties take extra care in preparing logs correctly in the first instance. This is because there is often insufficient time for parties to fix mistakes. A party may otherwise decide to prepare a slap-dash log in expedited litigation because the party expects that there will be no consequence. That is not, and cannot, be the rule. *See Pfizer Inc. v. Amgen Fremont Inc.*, C.A. No. 10667-VCL, Tr. at 19:8-22 (Del. Ch. July 10, 2015) ("I think waiver is the appropriate consequence. We have very sophisticated law firms. We have very sophisticated clients. We have

people who are used to working on expedited schedules. We have people who understand the implications."); *see also Klig*, 2010 WL 3489735, at *6 ("[A] practice of granting counsel a do-over even for this type of extreme behavior reinforces problematic incentives that already pervade the preparation of privilege logs.").

5. Second, the expedited portion of this action concerns the negotiation and interpretation of contract terms. As a result, it can be expected that a great number of responsive documents will nominally involve in-house counsel. Both sides had teams working on the issues that led to this dispute, and some members of those teams were lawyers. Care must be taken, then, to determine whether the involvement of a lawyer in a communication has truly rendered the communication the proper subject of a claim of privilege or work product protection. Not every communication where a lawyer is copied warrants the assertion of privilege.

6. Defendant's complaints about Plaintiff's log are not new. Defendant's November 7 motion to compel asserted that (1) approximately 95% of Plaintiff's nearly 2,000 log entries repeated one of three generic phrases as the purported topic of the communication, (2) nearly 80% of Plaintiff's log entries were entirely withheld from production (rather than redacted), and (3) over a third of the documents that Plaintiff withheld entirely failed to identify any particular attorney whatsoever as being involved in the communication. Defendant requested at that

time that I find Plaintiff's entire log deficient. I have, however, approached that relief with caution, to be imposed only if truly warranted.

7. Instead, in my initial ruling, I focused on Plaintiff's failure to identify any attorney at all for a great many of its log entries and directed Plaintiff to produce those documents to Defendant. In doing so, I cited this Court's ruling in *Stilwell Associates, L.P. v. HopFed Bancorp, Inc.*, which articulated the risk posed by such entries and why it is that we require a party withholding an otherwise responsive document to name an attorney (or, at a minimum, describe why an attorney cannot be identified after reasonable efforts):

> When you don't list an attorney for a document, that is not a good-faith log. If there's one thing that you have to have for attorney-client privilege or work product doctrine, it's an attorney. Now, you could be passing along an attorney's advice. That is theoretically possible. But there still has to be an attorney. It is simply too easy—and there's a lot of law on this, particularly in the Third Circuit's *Teleglobe* decision—it is too easy and too convenient for clients just to claim that whatever their communications between themselves happened to be involved attorney advice, to give credit to log entries that simply don't list anyone. So I am requiring those items to be produced.

C.A. No. 2017-0343-JTL, Tr. at 118:8–22 (Del. Ch. Aug. 28, 2017) (TRANSCRIPT); *see also Pfizer, Inc. v. Amgen Fremont Inc.*, C.A. No. 10667-VCL, Tr. at 23:19–24 (Del. Ch. July 10, 2015) ("As to the items on [the privilege log] where there's no lawyer listed, [privilege] is waived. Your log has to state why you think a lawyer was involved in it. . . . You actually have to suggest who the lawyer is."); *Navient Sols., LLC, et al. v. Conduent Educ. Servs., LLC*, C.A. No. 2019-0316-

7

JTL, Tr. at 87:6–18 (Del. Ch. Dec. 5, 2019) ("[Y]ou had an obligation to explain and justify your assertion of privilege. . . . But in a setting where there's no attorney on the document, you've got to give some indication as to why this document is privileged.").

8. As I explained in my November 28 letter decision, a party that is unable to identify the attorney involved is not without options:

> To be clear, if the attorney involved for a log entry truly cannot be identified after diligent inquiry, the party seeking to withhold the document on privilege or work-product grounds is not out of options—far from it. There are many ways that a party could still seek to satisfy its burden. For example, at a minimum, the party could set forth the identifying information it does have for the log entry and the reason why no further detail can be provided. But to do none of this—as Plaintiff chose to do here—fails to meet even the most basic logging requirements.

D.I. 171 at 7 n.19.

9. Having many log entries that do not identify an attorney is a red flag indicative of larger problems. That turned out to be very true here.

10. With the production of previously withheld documents now in hand, Defendant filed its renewed motion to compel. Defendant provided multiple examples of documents that Plaintiff had improperly withheld on the basis of privilege and which Plaintiff had improperly described on its log. Defendant

8

demonstrated how information improperly withheld was material—not tangential—to Defendant's development of its case.[2]

11. Based on the arguments presented by Defendant at the December 14 hearing on its renewed motion to compel, I could probably have granted Defendant's requested relief then. However, given that the remaining documents on Plaintiff's log clearly identified a lawyer as being involved, that we were then less than 24 hours before trial, and, frankly, my continued reluctance to grant the broad relief sought by Defendant, I declined to do so. Instead, I directed that Plaintiff submit for *in camera* review 100 documents of Defendant's choosing from the remaining entries on Plaintiff's log which were not the subject of my November 15 production order.

12. Having carefully reviewed the documents submitted for *in camera* review, I am satisfied that Defendant's renewed motion to compel must be granted, at least in part, for the reasons I explain below.

---

[2] Plaintiff's arguments in response to Defendant's renewed motion did not alleviate my concerns. Plaintiff, for example, suggested that I should have no concern over entry 1710 on its log. That entry referenced "[n]otes reflecting legal advice" from counsel "regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher" and gave a date of April 23, 2022. As it turns out, entry 1710 is actually a OneNote file from a key executive of Plaintiff that contains 63 different documents—57 emails and 6 sets of meeting notes. How could someone describe in good faith a OneNote file containing 63 different documents as a single document?

9

13. First, approximately 60% of the documents contained in the sample set are not privileged at all. I will provide some examples:

a. Entries 173 and 177 were each withheld in their entirety on privilege grounds and described as "[e]mail providing confidential information for the purpose of obtaining legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." Neither of these documents is privileged. Entry 173 is a brief cover email from a non-lawyer attaching a draft agreement (this entry does not include a copy of the draft agreement itself). Entry 177 is a cover email from a non-lawyer attaching slides for discussion (similarly, this entry does not include a copy of the draft slides themselves).

b. Entry 375 is an email chain with all internal Plaintiff communications redacted on privilege grounds. The document was described as an "[e]mail reflecting confidential attorney-client communications from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher[.]" In fact, the redacted information just reflects two non-privileged cover emails.

c. Entry 505 is an email chain reflecting twelve internal Plaintiff emails. It was entirely withheld on privilege grounds, with the description that it is an "[e]mail reflecting confidential attorney-client communications

10

from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The document is, in reality, just a series of non-privileged business discussions by business-persons concerning the supply agreement negotiations. *See, e.g.*, *In re Facebook, Inc.*, 2016 WL 7235222, at *2-3 (Del. Ch. Dec. 12, 2016) (nonlawyer's lists and analyses of deal terms "do not contain legal advice").

d.      Entry 508 is the same as Entry 505 (described above), except that it includes two more non-privileged internal Plaintiff emails in the chain. The document was also withheld entirely on privilege grounds, but this time the description was varied slightly, to call it an "[e]mail providing confidential information for the purpose of obtaining legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." Once again, however, the chain simply reflects business discussions by business people.

e.      Entry 521 is a chain of three emails that was withheld entirely on privilege grounds and described as an "[e]mail providing confidential information for the purpose of obtaining legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The email chain is plainly a business discussion.

11

f.     Entry 670 is a chain of two emails that was withheld entirely on privilege grounds and described as an "[e]mail containing legal advice from counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The first email in the chain is from a lawyer, but it summarizes his negotiation earlier that day with Defendant's representative. The email chain is a non-privileged business discussion. *See, e.g., Int'l Paper Co.*, 63 F.R.D. at 93 ("[P]rivilege [does not] apply to an attorney who is acting as a business agent of a party.").

g.     Entry 756 is an email chain in which seven emails among Plaintiff's in-house counsel are entirely redacted on privilege grounds, with the description "[e]mail reflecting legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The redacted emails are simply a series of logistics emails about finalizing the agreement. They do not "reflect[] legal advice" and are not privileged.

h.     Similarly, entry 761 unthinkingly redacts an email from an in-house lawyer concerning what amounts to a logistics heads-up regarding a meeting invite to a non-lawyer. It is described as an "[e]mail requesting confidential information for the purpose of rendering legal advice from counsel regarding negotiation of the supply agreement with Arranta to

12

manufacture plasmids for Thermo Fisher." The redacted text is not privileged, and the description—as generic as it is—does not remotely fit the redaction.

i. Entry 911 reflects a series of four internal Plaintiff emails, the text of which is entirely redacted on privilege grounds. The log provides the following description: "Email requesting confidential information for the purpose of rendering legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." In reality, the redacted text reflects a non-privileged discussion of individuals' availability to discuss finalization of the supply agreement. The description, once again, does not remotely fit the redactions.[3]

j. Entry 946 was entirely withheld on privilege grounds, with the description: "Email seeking legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The document is an email from a business person discussing business topics. It is a summary of the agreement's terms and requests final approval from various executives. It is not an "[e]mail seeking legal advice[,]" and it is not privileged.

---

[3] A similar improper example of Plaintiff's assertion of privilege is entry 408, which is solely a non-privileged Webex meeting invitation. It is withheld as privileged with the description: "Email providing confidential information for the purpose of obtaining legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher."

k. Entry 962 is the same as entry 946 (described above), but with the addition of an email reply from a non-lawyer with the single word, "Approved." The document was withheld entirely on privilege grounds. Bizarrely, the description for this entry—although still generic—is different from the description for entry 946. Entry 962 is described as an "[e]mail reflecting confidential attorney-client communications to counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." Like entry 946, it is not privileged, and its description does not match the document.

l. Entry 963 was withheld entirely on privilege grounds and described as an "[e]mail reflecting confidential attorney-client communications from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." In reality, it is a series of emails between in-house counsel trying to figure out how to insert a signed signature page into the PDF execution version of the agreement.

m. Entry 1291 was withheld entirely on privilege grounds and described as an "[e]mail providing confidential information for the purpose of obtaining legal advice from counsel regarding the acquisition of Arranta by Recipharm." In fact, it is a non-lawyer pasting Recipharm's financials into an

14

email and then just saying that Recipharm is a competitor. It is a businessperson making a non-privileged observation.

n. Entry 1397 is an email withheld entirely on privilege grounds with the description: "Email seeking legal advice of counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." In reality, it is just a non-privileged cover email.

o. Entry 1572 is an email in which the text of the internal Plaintiff email is entirely redacted on privilege grounds. The description states: "Email reflecting confidential attorney-client communications to counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." In fact, the redacted text is essentially another logistics email from a non-lawyer and reveals nothing privileged.[4]

14. The evidence presented by Defendant, coupled with my *in camera* review, strongly indicates that Plaintiff repeatedly and unthinkingly claimed privilege over non-privileged communications simply due to the presence of a lawyer in preparing its log. That is improper: "The presence of a lawyer does not

---

[4] Entry 1573 is the attachment to entry 1572 (described above) and appears to be the version of the termination letter that Plaintiff shared with Defendant. It is withheld entirely on privilege grounds and is described as a "letter reflecting confidential attorney-client communications to counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher."

15

transform a non-privileged communication into a privileged one[.]"*Titan Inv. Fund II, LP v. Freedom Mortg. Corp.*, 2011 WL 532011, at *3 (Del. Super. Feb. 2, 2011). This problem was greatly compounded by the generic and inaccurate descriptions associated with the documents, which necessarily made any challenge to specific entries on Plaintiff's log unnecessarily difficult. *See Klig*, 2010 WL 3489735, at *6 ("Vapid and vacuous descriptions interfere with the adversary's decision-making process. Just as you can't hit what you can't see, you can't challenge what the other side hasn't described.").

15.     Second, even in the minority of documents that do properly contain privileged or work-product information, Plaintiff has withheld the document entirely or grossly over-redacted it in the majority of cases. *See MPEG LA, L.L.C. v. Dell Glob. B.V.*, 2013 WL 6628782, at *2 (Del. Ch. Dec. 9, 2013) ("[T]he communication will be considered privileged only if the legal aspects predominate."). I provide some examples:

     a.     Entry 440 is a chain of three emails that Plaintiff withheld entirely, with the generic description: "Email providing confidential information for the purpose of obtaining legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." Upon review, I find that while a line of text in the last email

16

in the chain could be redacted, the rest of the email chain reflects a non-lawyer reporting on non-privileged business matters to executives.

b. Entry 598 reflects a chain of four emails that Plaintiff withheld entirely, with the generic description: "Email reflecting confidential attorney-client communications to counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." I find that while a line in the initial email in the chain could arguably be redacted, the rest of the email chain reflects non-privileged communications.

c. Entry 624 reflects a chain of four emails, with the text of three redacted entirely on privilege grounds. The generic description provides: "Email stating planned request for legal advice regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." It appears that Plaintiff redacted the text because an email refers simply to an individual having scheduled a meeting with lawyers the following day. The redacted text, however, reflects no privileged information. Instead, it is a discussion of business terms between non-lawyers.

d. Entry 697 is a chain of nine emails that is entirely withheld on privilege grounds, with the generic description: "Email providing confidential information for the purpose of obtaining legal advice from counsel regarding termination of the supply agreement with Arranta to

17

manufacture plasmids for Thermo Fisher." Almost all of the email chain reflects non-privileged reporting on business negotiations and discussion of business terms.

e. Entry 737 is a chain of seven emails that is entirely withheld on privilege grounds, with the generic description: "Email containing legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." Six of the seven emails in the chain are between Plaintiff and Defendant, and one line in the last email in the chain could have been redacted.

f. Entry 746 is a lengthy email chain that begins with a series of emails between Plaintiff and Defendant. The last six emails in the chain are solely internal Plaintiff emails. The text of those six emails is entirely redacted on privilege grounds, with the generic description: "Email reflecting confidential attorney-client communications from counsel." Nearly all of the redacted text, however, reflects non-privileged reports on business negotiations and discussions of business terms. It is striking that the lawyer who authored much of the text that Plaintiff redacted states, within that same redacted text, that during the course of the negotiation, he informed Defendant's representatives that he is "acting as management not legal counsel on this[.]"

18

g.      Entry 871 reflects the complete redaction of the text of three emails on privilege grounds, with the generic description: "Email containing legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." Although some of the text could be redacted, Plaintiff chose to redact plainly non-privileged business discussions between non-lawyers. The document is another example of Plaintiff's indiscriminate approach to asserting privilege over internal communications.

h.      Entry 1417 is a chain of four emails that is entirely withheld on privilege grounds, with the generic description: "Email providing confidential information for the purpose of obtaining legal advice from counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." Although three lines could have been redacted, the remainder of the chain reflects non-privileged business communications concerning financial modeling of various scenarios.

i.      Entry 1634 was entirely withheld on privilege grounds, with the generic description: "Email providing confidential information for the purpose of obtaining legal advice from counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo

19

Fisher." Although five lines could have been redacted, most of the email reflects notes of a non-privileged business discussion.

16. Third, Plaintiff's log descriptions are overly generic and repetitive. Worse, however, is that those generic descriptions still misdescribe the document in approximately 80% of cases in the sample set. "An improperly asserted claim of privilege is no claim of privilege at all." *International Paper*, 63 F.R.D. at 94; *accord, e.g.*, *Williams Nat. Gas Co. v. Amoco Prod. Co.*, 1991 WL 236919, at *3 (Del. Super. Ct. Nov. 8, 1991) (1974). A court can order production where the descriptions are so repetitive as to be meaningless. *E.g.*, *In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 959396, at *6 (Del. Ch. Mar. 13, 2017) (ordering waiver where "repetitive descriptions fall substantially short of Delaware's well-established requirements") (citation omitted). Examples follow:

a. Entry 1060 is withheld entirely on privilege grounds, with the generic description: "Email seeking legal advice to counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." Besides not being privileged, it is an email from a non-lawyer to senior executives prodding them to respond and authorize Plaintiff to sign the supply agreement. It is decidedly not an "[e]mail seeking legal advice[.]"

20

b.      Entry 1115 is a slide deck that was entirely withheld as privileged, with the generic description: "Presentation providing confidential information for the purpose of obtaining legal advice from counsel regarding negotiation of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The document is dated December 18, 2020, months after the parties executed the supply agreement, and the redacted text concerns the termination provisions of the supply agreement. The description is therefore both generic and misleading.

c.      Entry 1627 is a chain of two emails that is entirely withheld on privilege and work-product grounds, with the generic description: "Email providing confidential information for the purpose of obtaining legal advice from counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The email chain simply involves a question from a non-lawyer, that is answered by another non-lawyer, about whether a customer can be informed of the Arranta supply agreement's termination. There is no privileged or work-product information in the document.

d.      Entry 1656 is redacted on privilege grounds, with the generic description: "Email stating planned request for legal advice from counsel regarding the termination of the supply agreement with Arranta to

21

manufacture plasmids for Thermo Fisher." Even setting aside that one email contains only the text "fyi," which Plaintiff apparently decided was sufficiently privileged to justify redaction, the description bears only a faint resemblance to the content of the correspondence.

e.     Entry 1855 is redacted, with the generic description: "Email reflecting legal advice from counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The redacted text, which is non-privileged, refers to a non-lawyer's recollection of notes of a meeting with Defendant, not "legal advice from counsel[.]"

f.     Entry 1950 is withheld entirely on privilege grounds, with the generic description: "Email providing confidential information for the purpose of obtaining legal advice from counsel regarding the termination of the supply agreement with Arranta to manufacture plasmids for Thermo Fisher." The document, however, is a non-privileged email discussing business matters and circulating a slide deck to a host of non-lawyers, and some lawyers, in advance of a meeting. The description seems to bear little relationship to the real nature of the document and, in any event, gives entirely insufficient understanding of the document for log purposes.

17.    As noted earlier, Defendant asserts that Plaintiff's log reflects nearly wholesale use of generic descriptions of the sort identified in the examples above. I

22

agree. It is as though, in preparing the descriptions, reviewers quickly constructed their descriptions using three "drop-down" menus containing a very limited set of pre-filled words and phrases. Indeed, my *in camera* review has left me with the distinct impression that the log was produced to Defendant after only a hasty first-level pass through the documents by junior associates or, perhaps, contract reviewers, with no meaningful second-level review undertaken by those junior attorneys, much less the meaningful involvement by senior attorneys that this court expects. Plaintiff's privilege and work product calls, and associated log entries, are what one might expect to see at a law firm following a quick first pass through collected documents that hit on search terms. The expectation, then, would be that attorneys with more experience or understanding of the facts would undertake a second-level (and perhaps third-level) review to make individualized privilege and work-product calls and redactions and to craft appropriate document descriptions. Then a senior Delaware attorney would weigh in on the difficult calls. That does not appear to have happened here. And, if it did, that would be even more concerning.

18. The problems with Plaintiff's log are so pervasive that I could—and arguably should—grant Defendant's request for relief as to the entirety of Plaintiff's log.

19. My review of the *in camera* documents, however, suggests that, following Plaintiff's delivery of the April 15, 2022 termination letter in this action, the number of logged documents that reflect actual privileged communications or work-product rises significantly. This is not unexpected, given that the parties essentially ceased business discussions and shifted to a pre-litigation footing following the delivery of the letter.

20. To be clear, this does not mean that the log is not still riddled with errors based on the *in camera* documents I have reviewed for this time period. However, before I make a conclusion as to appropriate relief for the time-period commencing March 31, 2022 (approximately two weeks before the termination letter was sent to Arranta), I will review a further sample set of 30 randomly selected documents for the period following the date on which the termination letter was sent to Arranta (*i.e.*, after April 15, 2022). The parties are directed to agree on a random selection of documents other than draft complaint and regulatory filings, and Plaintiff shall send them to me within five business days for my review.

21. As to the remainder of Plaintiff's log entries—*i.e.*, the log entries for the period up to March 31, 2022—Plaintiff is directed to produce those documents, without redaction, to Defendant within two business days.

22. Finally, I note that Defendant's renewed motion asked that I direct Plaintiff to produce all responsive communications between Kevin Sullivan and

Foley Hoag. To extent this aspect of the motion still needs a ruling, I deny the request. Plaintiff identified Foley Hoag in its September 29 interrogatory responses as outside counsel that was retained for the drafting of the termination letter and the May 2 letter. Plaintiff states that Defendant did not then mention Foley Hoag when subsequently negotiating custodians and search terms and that Foley Hoag documents were not captured in Plaintiff's search pursuant to the negotiated search terms. On this dispute, I agree with Plaintiff. Parties make choices during litigation. There are of course circumstances where the outcome could be different, but I do not find a basis to revisit this aspect of discovery here.

23. The Motion is GRANTED in part, DENIED in part, and HELD IN ABEYANCE in part pending my additional *in camera* review.

*/s/ Nathan A. Cook*
Vice Chancellor Nathan A. Cook
